UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENISE B.,

           Plaintiff,

      v.                                                                                      **DECISION AND ORDER**
                                                                                              19-CV-1539S

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

        1.        Plaintiff Denise B.[1] challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since October 1, 2010, due to various physical and mental conditions, including post-traumatic stress disorder, substance induced mood disorders, anxiety disorder not otherwise specified, bipolar disorder, generalized osteoarthritis, moderate thumb osteoarthritis, and obesity. Plaintiff maintains that she is entitled to disability benefits because her impairments render her unable to work.

        2.        Plaintiff filed an application for disability benefits and supplemental security income on July 26, 2016. After denial at the agency level, Plaintiff proceeded to a hearing before an ALJ, which took place before ALJ Stephan Bell on September 14, 2018. At the time of the hearing, Plaintiff was 54 years old, with a limited education, and no past relevant work experience. The ALJ considered the case *de novo* and, on November 1,

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

2018, issued a written decision denying Plaintiff's application for benefits. The Appeals Council thereafter denied Plaintiff's request for review on September 16, 2019.

3.  Plaintiff filed the current action on November 14, 2019, challenging the Commissioner's final decision.[2] After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on July 13, 2020. (Docket Nos. 6, 9, 11.) The Clerk of Court thereafter assigned the case on October 6, 2020, at which time this Court took the motions under advisement without oral argument. (Docket No. 12.) For the following reasons, Plaintiff's motion will be granted, Defendant's motion will be denied, and this matter will be remanded to the Commissioner for further proceedings.

4.  A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted). In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. §§ 405 (g), 1383 (c)(3).

5.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405 (g), 1383 (c)(3); Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2) whether the Commissioner's factual findings are supported by substantial

---

[2] The ALJ's November 1, 2018 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

evidence. See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

      6.      As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted). This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

7. As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). The United States Supreme Court defines substantial evidence as only "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. §§ 405 (g), 1383 (c)(3), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position. See Zacharopoulos v. Saul, CV 19-5075 (GRB), 2021 WL 235630, at *7 (E.D.N.Y. Jan. 25, 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)). This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

8. "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of

Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). Similarly, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise.*'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

9. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

10. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the

5

>fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11. The claimant has the burden of proof on the first four steps; the Commissioner has the burden of proof on the fifth step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The fifth step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. §§ 423 (d)(2)(A), 1383 (c)(1)(A); 20 C.F.R. §§ 404.1520 (f), 416.920 (a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

12. In this case, the ALJ found the following with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since October 1, 2010, the alleged onset date (R. at 516);[3] (2) Plaintiff's post-traumatic stress disorder, substance induced mood disorder, anxiety disorder not otherwise specified, bipolar disorder, alcohol use disorder, cocaine use disorder, opiate use disorder, marijuana use disorder, polysubstance use disorder, generalized osteoarthritis, moderate thumb osteoarthritis, and obesity are severe impairments within the meaning of the Act (R. at

---

[3] Citations to the underlying administrative record are designated as "R."

517-18); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 518-20); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967 (b), with certain exceptions[4] (R. at 520-24); (5) Plaintiff had no past relevant work (R. at 524); and (6) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 525). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act from October 1, 2010, through November 1, 2018. (R. at 515, 526.)

13.   Plaintiff challenges the ALJ's decision on two fronts. First, she contends that the RFC determination is not supported by substantial evidence because the ALJ "cherry picked" portions of the treating physician's opinion (Dr. Kevin Lesh) and rejected the rest, leaving the RFC impermissibly based on only the ALJ's interpretation of bare medical evidence, rather than a supporting medical opinion. Second, she maintains that the ALJ misapplied the treating-physician rule. In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and free from legal error and should therefore be affirmed. Because this Court finds that remand is necessary for a proper RFC determination, it does not reach Plaintiff's second argument, which the ALJ and the parties are free to revisit on remand.

14.   RFC is "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2). To

---

[4] The ALJ found that Plaintiff retained the RFC for light work, except that Plaintiff can only lift and carry 20 pounds occasionally and 10 pounds frequently; can only sit, stand, or walk for six hours; can only push/pull as much as she can lift/carry; can never climb ladders, ropes, or scaffolds; can never work at unprotected heights or around moving mechanical parts; can never operate a motor vehicle; can perform only simple, routine and repetitive tasks but not at a production-rate pace (e.g. assembly line work); and can make only simple work-related decisions. (R. at 520-24.)

7

properly determine RFC, the ALJ must assess all relevant medical and other evidence in the record. See 20 C.F.R. §§ 404.1545 (a)(1), 416.945 (a)(1). Such evidence includes, *inter alia*, objective medical evidence, medical opinions, medical history, clinical findings, and the claimant's own assessment of limitations. 20 C.F.R. §§ 404.1513 (a)(1)-(5); 416.913 (a)(1)-(5); see also Josua S. v. Comm'r of Soc. Sec., 6:19-CV-1434 (ML), 2021 WL 105769, at *4 (N.D.N.Y. Jan. 11, 2021) ("In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.") (collecting cases). While the ALJ is precluded from substituting his or her own opinion for competent medical evidence, the ALJ is nonetheless entitled to weigh all of the evidence, resolve conflicts within it, and reach an RFC that is consistent with the record as a whole. See Quinn v. Colvin, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016). And the ALJ's RFC determination need neither track nor correspond perfectly with any single medical opinion. Id. Finally, "[a]lthough the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on the Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity." Richard B. v. Comm'r of Soc. Sec., 1:19-CV-579 (WBC), 2021 WL 22504, at *4 (W.D.N.Y. Jan. 4, 2021).

15.    Here, the ALJ determined that Plaintiff could perform light work with specified limitations. (R. at 520-24.) To be considered capable of performing a full range of light work, an individual must generally have the substantial ability to lift 20 pounds or less at a time, frequently lift or carry objects weighing up to 10 pounds, walk or stand a good deal, and push and pull arm or leg controls while seated. See 20 C.F.R. §§ 404.1567 (b), 416.967 (b). To account for Plaintiff's specific functional limitations, the

ALJ restricted Plaintiff's RFC to only lifting and carrying 20 pounds occasionally and 10 pounds frequently; only sitting, standing, or walking for six hours; only pushing/pulling as much as she can lift/carry; never climbing ladders, ropes, or scaffolds; never working at unprotected heights or around moving mechanical parts; never operating a motor vehicle; performing only simple, routine and repetitive tasks but not at a production-rate pace (e.g. assembly line work); and making only simple work-related decisions.  (R. at 520-24.)

16.    The ALJ reached this determination after reviewing and evaluating the record evidence.  First, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence.  (R. at 522.)  The ALJ found that although Plaintiff testified to suffering from debilitating physical and mental conditions that prevented her from leaving the house, she was nonetheless able to attend to her own daily activities with success, including simple cooking, limited chores, shopping, attending appointments, and attending group therapies.  (R. at 521-22, 523.)  The ALJ further found that Plaintiff's testimony concerning the intensity of her conditions was undermined by her failure to follow through with physical therapy recommendations, failure to obtain and use recommended splints and back braces, failure to seek more aggressive treatment modalities, and use of only over-the-counter medications for pain.  (R. at 521-22.)

17.    Second, the ALJ considered the medical evidence.  In canvassing the evidence, the ALJ noted that objective radiology reports of Plaintiff's back revealed normal alignment, no fractures, well preserved disc spaces, and only mild degenerative changes.  (R. at 522.)  All other musculoskeletal findings were normal in gait and station, with full range of motion in Plaintiff's extremities, though there was decreased range of

motion secondary to pain in Plaintiff's lumbar spine.  (R. at 522.)  The ALJ further found that Plaintiff's mental disorders were well controlled by medication and mental health counseling.  (R. at 523.)  So too concerning Plaintiff's substance-abuse issues, which the ALJ found were clearly improved through dramatically reduced substance intake and multiple group therapies, which included "participation in individual therapy, toxicology readings, and group sessions five times per week."  (R. at 523.)

18.   Third, the ALJ considered the medical opinion evidence.  Dr. Lesh, who served as Plaintiff's primary care physician for more than three years and saw her every three months, completed a medical source statement on September 6, 2018.  (R. at 1128-1131.)  He opined that due to her physical and mental impairments, Plaintiff could not walk a city block; could sit and stand for only 10 minutes at a time; could sit, stand, or walk for less than two hours in an 8-hour workday; and would require a job that permits shifting positions at will from sitting, standing, and walking.  (R. at 1129.)  He further opined that Plaintiff would need to walk for five minutes every 10 minutes in an 8-hour workday and may need to take unscheduled breaks of 10-15 minutes on a daily basis due to her chronic fatigue, pain, and mental disorders.  (R. at 1129.)  Dr. Lesh further stated that Plaintiff could occasionally lift and carry less than 10 pounds and could rarely twist, stoop (bend), crouch/squat, climb stairs, or climb ladders.  (R. at 1130.)  He found that Plaintiff did not need to sit with legs elevated, did not need an assistive device to stand or walk, and did not have any significant limitations in reaching, handling, or fingering.  (R. at 1130.)  Dr. Lesh viewed Plaintiff as incapable of even low-stress work due to her mental limitations and indicated that she would be off task more than 25% of the time.  (R. at 1130.)  He further opined that Plaintiff would have good and bad days,

and would likely be absent from work more than four days per month due to her impairments or for treatment. (R. at 1130.)

19. LMSW Lauren Simoncelli, who provided Plaintiff inpatient mental health counseling at Spectrum Human Services, completed a mental medical source statement on August 27, 2018. (R. at 1070-1075.) Simoncelli opined that Plaintiff had unlimited or very good abilities and aptitudes to perform unskilled work, but she found Plaintiff seriously limited in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and limited but satisfactory in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 1072.) Simoncelli further opined that Plaintiff was limited in her ability to complete semi-skilled and skilled work. (R. at 1073.) Like Dr. Lesh, Simoncelli opined that Plaintiff would be absent from work more than four days per month. (R. at 1074.) But overall, Simoncelli stated that she could not render a complete opinion concerning Plaintiff's ability to do well or be successful in the workplace because she had just recently been assigned Plaintiff as a client. (R. at 1072.)

20. As to Dr. Lesh's opinion concerning Plaintiff's physical impairments, the ALJ gave significant weight to the absence of limitations in reaching, handling, and fingering, but otherwise afforded Dr. Lesh's opinion little weight, finding that it was inconsistent with Plaintiff's activity level and treating record. (R. at 523.) As to Dr. Lesh's opinion concerning Plaintiff's mental impairments, the ALJ afforded it little weight because he found it inconsistent with Plaintiff's own reported functioning and the longitudinal record as a whole. (R. at 524.) As to Simoncelli's opinion, the ALJ gave significant weight to her assessment that Plaintiff could perform unskilled work, but little weight to her opinion

concerning Plaintiff's expected absences from work because he found it inconsistent with the record. (R. at 524.)

21.    Plaintiff challenges the ALJ's RFC determination on two fronts. First, she argues that the ALJ impermissibly "cherry picked" from Dr. Lesh's opinion. "Cherry picking" in this context refers to an ALJ picking and choosing within a single medical opinion, crediting the portions that support the ALJ's findings and ignoring the portions that do not. See Dowling v. Comm'r of Soc. Sec., No. 5:19-CV-1558 (DJS), 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015) (describing cherry picking as "improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source.") Such a practice "suggests a serious misreading of evidence, or failure to comply with the requirement that all evidence be taken into account, or both." Id. at *11 (citing Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010)).

22.    But the mere failure to mention portions of a medical opinion is not cherry picking: ALJs are not required to mention or address every piece of evidence presented, so long as the reviewing court can glean the rationale of the decision. See Monguer v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). Nor do ALJs impermissibly "cherry pick" when they accept only a portion of a medical opinion, particularly when they explain their reasons for doing so. See Dowling, 2015 WL 5512408, at 11 (noting that an ALJ "must have a sound reason for weighting portions of the same-source opinions differently").

23.    Here, the ALJ examined Dr. Lesh's entire opinion and adequately explained his consideration of it. The ALJ first afforded significant weight to Dr. Lesh's opinion that Plaintiff had no limitations in reaching, handling, and fingering. (R. at 523.) He then afforded little weight to Dr. Lesh's opinions concerning Plaintiff's physical and mental

limitations, explaining that he did so because they were inconsistent with the longitudinal treatment records and Plaintiff's own reporting of her activity levels, both of which the ALJ previously discussed at length. (R. at 523, 524.) The ALJ explained his consideration of Simoncelli's opinion in a similar manner. (R. at 524.) While Plaintiff may disagree with the ALJ's evaluation of Dr. Lesh's and Simoncelli's opinions, it is clear from the record that the ALJ considered each opinion and explained his reasons for rejecting portions of them. There is thus no indication of impermissible "cherry picking."

24. Plaintiff next argues that the RFC determination is not supported by substantial evidence because it is not based on medical opinion evidence. "In general, the ALJ is obligated to formulate Plaintiff's RFC based on the record as a whole, not just upon the medical opinions alone." Richard B., 2021 WL 22504, at *5 (citing Trepanier v. Comm'r of Soc. Sec. Admin., 752 F. App'x 75, 79 (2d Cir. 2018)). It is thus not error, *per se*, for an ALJ to formulate an RFC in the absence of medical opinion evidence. See, e.g., Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, at *8-9 (2d Cir. Jan. 18, 2017) (stating that where "the record contains sufficient evidence from which an ALJ can assess the claimant's [RFC], a medical source statement or formal medical opinion is not necessarily required") (quotation marks and citations omitted).

25. Medical opinion evidence is thus just one subset of evidence that the ALJ must consider in reaching an RFC determination. See 20 C.F.R. §§ 404.1513 (a)(1)-(5); 416.913 (a)(1)-(5). But it is an important subset because as a lay person, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." See Wilson v. Colvin, No. 13-CV-6286P, 2015 WL

1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (quotations marks and citation omitted). "Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself." Williams v. Berryhill, 16-CV-283G, 2017 WL 1370995, at *3 (W.D.N.Y. Apr. 17, 2020) (citing Wilson, 2015 WL 1003933, at *21) (quotations and alterations omitted); see also Muhammad v. Colvin, No. 6:16-cv-6369 (MAT), 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017) ("While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source.") (quotations marks and citation omitted).

26. Here, the ALJ rejected virtually all of the medical opinion evidence, and there is no other useful assessment of Plaintiff's limitations in the record from which the ALJ could have reached his RFC determination. The ALJ's rejection of the opinion evidence, whether justified or not, left a hole in the record, there being no credited medical opinions assessing the effect of Plaintiff's impairments on her ability to work. While it is true that the ALJ must consider the record evidence as a whole in determining RFC, that does not permit an ALJ to make medical determinations from treatment notes concerning the effect of a claimant's limitations on his or her ability to work, which is what the ALJ did here after rejecting the opinion evidence. See Williams, 2017 WL 1370995, at *4 ("A significant portion of the ALJ's decision summarizes the medical evidence of record, but

14

these treatment notes merely contain bare medical findings and do not address how Williams's impairments affect her ability to perform work-related functions.")

27. Moreover, Plaintiff's physical and mental limitations are not minor impairments upon which the ALJ could permissibly render a common-sense judgment about their limiting effects without a medical-source assessment. See Walker v. Astrue, No. 08-CV-828A, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (recognizing that "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment") (citing Manso-Pizarro v. Sec'y of Health & Hum. Servs., 76 F.3d 15, 17 (1st Cir. 1996)).

28. A medical opinion was therefore necessary in this case for proper assessment of Plaintiff's RFC. See Keener v. Comm'r of Soc. Sec., 18-CV-913R, 2020 WL 755377, at *5 (W.D.N.Y. Feb. 7, 2020) (remanding for further development of the record where no credited medical opinion supported the RFC). Since the record contains no such credited opinion, and since the ALJ did not develop the record to include one, remand is required. See id.; see also Rivera-Maysonet v. Comm'r of Soc. Sec., 18-CV-1142G, 2020 WL 813306, at *3-6 (W.D.N.Y. Feb. 19, 2020) (finding ALJ's RFC unsupported by substantial evidence in the record where the ALJ discounted all medical opinions that addressed the plaintiff's physical and mental work-related abilities); Dennis v. Colvin, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (finding that an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence).

29. Accordingly, after carefully examining the administrative record, this Court finds cause to remand this case to the Commissioner for further administrative

proceedings consistent with this decision.  Plaintiff's motion for judgment on the pleadings is therefore granted.  Defendant's motion seeking the same relief is denied.

      IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

      FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

      FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

      FURTHER, that the Clerk of Court is directed to CLOSE this case.

      SO ORDERED.

Dated:     February 10, 2020
             Buffalo, New York

                                               <u>s/William M. Skretny</u>
                                                WILLIAM M. SKRETNY
                                                United States District Judge